******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

McDONALD, J., concurring in part and dissenting in part. The expectation that jurors will be awake during the presentation of evidence in a criminal trial would seem to be an obvious one. This is because, when a juror is sleeping, the juror cannot possibly hear the testimony, observe the body language of witnesses or view exhibits in the courtroom. It is for this reason that sleeping or inattentiveness is widely considered a form of juror misconduct that warrants reversal when it has denied a criminal defendant a fair trial. See, e.g., *Commonwealth* v. *McGhee*, 470 Mass. 638, 645–46, 25 N.E.3d 251 (2015); see also, e.g., *State* v. *Hughes*, 341 Conn. 387, 417–18, 267 A.3d 81 (2021). This court, in discussing the implications of juror misconduct, has explained that "[a] great deal is at stake in a criminal trial" because "[t]he accused . . . has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction." (Internal quotation marks omitted.) *State* v. *Brown*, 235 Conn. 502, 526–27, 668 A.2d 1288 (1995); accord *In re Winship*, 397 U.S. 358, 363, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).[1] This court has therefore recognized that, although "the trial court has broad discretion to determine the form and scope of the proper response to allegations of jury misconduct"; *State* v. *Brown*, supra, 523–24; in exercising that discretion, it must "zealously protect the rights of the accused." (Internal quotation marks omitted.) Id., 524. Among those rights is that of a fair trial by a panel of impartial jurors. See, e.g., id., 523. "Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution." Id., 522. Today, a

---

[1] Similarly, I would posit that the state, as the representative of the people, has a compelling interest in vindicating the rights of the community and the interests of crime victims.

majority of this court permits the trial courts in our state to ease up on the vigilance with which they must safeguard the rights of the accused and allows the trial courts to take a decidedly more relaxed approach to ensuring that a criminal defendant receives a fair trial. The majority focuses on the fact that defense counsel failed to protect the defendant's constitutional rights rather than the fact that the trial court, on the basis of its own independent observation of the courtroom proceedings, did not take affirmative measures to address the situation when it observed a juror sleeping for more than one hour during critical testimony in the trial.

The defendant, Trevor Monroe Outlaw, appeals from his conviction of murder, criminal possession of a firearm, and carrying a pistol without a permit to this court. The defendant raises four issues on appeal, namely, that (1) the trial court abused its discretion when it failed to take any action regarding a sleeping juror, (2) the trial court erred by allowing the prosecutors to elicit testimony pertaining to witnesses' involvement in witness protection programs, (3) the trial court erred in admitting evidence that the state's key witness pleaded guilty to conspiracy for the victim's shooting, and (4) the prosecutor improperly commented on the defendant's coconspirator's pleading guilty to conspiracy in violation of the defendant's right to a jury trial. I agree with the majority as to its resolution of the second, third, and fourth issues on appeal. See parts II, III and IV of the majority opinion. I do not agree with the majority's conclusion that the trial court did not abuse its discretion in failing to take appropriate action in investigating the juror misconduct at issue—the sleeping juror—and, accordingly, I respectfully dissent as to that issue. See part I of the majority opinion.

I agree with the majority's summary of the facts that the jury reasonably could have found pertaining to the crimes at issue in this case. For purposes of this opinion,

however, I briefly summarize the facts surrounding the trial court's response to the sleeping juror. During a recess on the first day of trial, the trial court met with counsel and informed them that it had noticed one of the jurors sleeping during the presentation of evidence. Defense counsel stated that he had not observed the behavior and communicated his opposition to immediately removing the juror. Following this conversation, but prior to summoning the jurors, the court stated on the record that it "noted, [at] about 2:30 [p.m.], that [the juror's] eyes had been closed a little bit before that and did [jerk] open, but, essentially, from about 2:30 [p.m.] . . . [until] we recessed at 3:33 [p.m.] or so, he looked to be asleep." The court further noted that "[the court] clerk noticed it as well, as did the monitor, as did, I believe, at least two of the marshals." When the prosecutors were asked whether they had made similar observations, one of the prosecutors responded that both prosecutors had observed the juror sleeping, "not only [during] this afternoon, but also [during] this morning's session" and "during the court's opening remarks before trial commenced." The prosecutor further stated that an "intern [in the state's attorney's office], the victim's family members, as well as several other individuals, witnessed the same behavior." The court then noted that it would "not contemplate any actions at this point" but that it was "contemplating excusing [the juror] if [the court saw] a repeat of that—what appears to be that conduct." That same day, one of the prosecutors mentioned that he again noticed the juror sleeping during the testimony of one or both of the police detectives who had investigated the crimes. After defense counsel again stated that he was not sure whether he had noticed the behavior, the trial court responded that, "[i]f [the court sees that the juror is] doing it again, [the court is] going to take action." The issue was not addressed further during the trial.

On appeal, the defendant asserts that the trial court abused its discretion when it failed to take any action regarding the sleeping juror. The defendant concedes that the issue is unpreserved but argues that it can be reviewed pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), because the record is adequate for review and the claim is of constitutional magnitude. Alternatively, the defendant argues that the issue can be reviewed for plain error. See, e.g., *State* v. *Blaine*, 334 Conn. 298, 305–306, 221 A.3d 798 (2019). In support of these contentions, the defendant argues that inattentiveness by a juror is considered a form of juror misconduct and that the trial court had a duty to act when it noticed the juror sleeping throughout the day. The defendant contends that the trial court has this duty to act even in the absence of a specific request by the defense and that, in this case, "the court utterly failed to protect the defendant's rights." The defendant contends that the trial court's lack of action in this case amounts to structural error that requires a new trial. For its part, the state argues that this court should not review the defendant's claim because defense counsel induced the trial court not to take any further action regarding the juror. Alternatively, the state asserts that the defendant cannot successfully prove a constitutional violation under *Golding* or plain error because the trial court reasonably concluded that no further action was warranted.

"Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless

error analysis, the state has failed to demonstrate harm-lessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Morel-Vargas*, 343 Conn. 247, 253, 273 A.3d 661, cert. denied,     U.S.    , 143 S. Ct. 263, 214 L. Ed. 2d 114 (2022).

I agree with the majority's conclusion that the first two prongs of *Golding* are satisfied in this case. I part ways with the majority, however, on the question of whether the defendant has satisfied the third prong of *Golding* by demonstrating that a constitutional violation had occurred that deprived him of a fair trial. On this issue, the majority, quoting *State* v. *Collins*, 38 Conn. App. 247, 259, 661 A.2d 612 (1995), contends that the defense's "failure to seek [a] determination of [the] nature and extent of [the] alleged misconduct 'seriously undermine[d]' [the] claim that [the defendant] was deprived of [a] fair trial  . . . ." Text accompanying footnote 10 of the majority opinion. This court, in *Brown*, however, explicitly held that it is the duty of the *trial court*, and not of the *defense*, to ensure that a preliminary inquiry is conducted when faced with allegations of jury misconduct. See *State* v. *Brown*, supra, 235 Conn. 526 ("we now hold that henceforth a trial court must conduct a preliminary inquiry, on the record, whenever it is presented with any allegations of jury misconduct in a criminal case, regardless of whether an inquiry is requested by counsel" (footnote omitted)). This court's holding in *Brown*, as the majority points out, finds support in the decisions of federal and state appellate courts. See, e.g., *United States* v. *Barrett*, 703 F.2d 1076, 1083 (9th Cir. 1983) (holding that trial court's failure to "conduct a hearing or [to] make any investigation into the [sleeping juror] question" was abuse of discretion); *People* v. *Franqui*, 123 App. Div. 3d 512, 512, 999 N.Y.S.2d 40 (2014) (holding that "[t]he [trial] court should have conducted a probing and tactful inquiry

. . . into whether, and to what extent, the juror had been sleeping, in order to determine whether this behavior rendered him grossly unqualified" (citation omitted; internal quotation marks omitted)), appeal denied, 25 N.Y.3d 1163, 36 N.E.3d 98, 15 N.Y.S.3d 295 (2015).

I am sensitive to defense counsel's desire, which was adamantly communicated to the trial court, that the sole Black juror not be removed from the jury. I am equally sensitive to the incredibly difficult spot that defense counsel's expressed wishes placed the trial court in—on one hand, the court having to consider the interest of a Black defendant to have at least one member of the jury be of the same race as him, and, on the other hand, the court's obligation to ensure that a jury is fully engaged in, and awake for, the presentation of the evidence. Recognizing the clear conundrum that the trial judge faced in this case, I fully appreciate that the judge tried to do his level best in the moment to navigate those shoals. But I also must note that nothing in this record suggests that defense counsel's wish to have the juror remain was an effort to induce error on the part of the trial court. See, e.g., *State* v. *Cruz*, 269 Conn. 97, 105, 848 A.2d 445 (2004) ("[i]t is well established that a party who induces an error cannot be heard to later complain about that error"). Rather, the record makes clear, and the majority points out as well, that defense counsel did not oppose all actions capable of being taken by the trial court in the present case, such as questioning the juror. See part I of the majority opinion. Furthermore, regardless of what action by the court defense counsel was in favor of, or opposed to, it is ultimately the hard job of the trial judge to ensure that the trial is conducted appropriately, and, thus, it is the trial judge alone who holds the decision-making power in such a difficult circumstance. See, e.g., *State* v. *Robertson*, 254 Conn. 739, 769, 760 A.2d 82 (2000) ("In a criminal trial, the judge is more

than a mere moderator of the proceedings. It is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." (Internal quotation marks omitted.)).

Furthermore, the majority finds much support in our holding in *State* v. *Brown*, supra, 235 Conn. 526, that "a preliminary inquiry of counsel" may be an adequate response to allegations of juror misconduct. See part I of the majority opinion. It is true that, in *Brown*, this court determined that, in some circumstances, a preliminary inquiry of counsel may be all that is necessary for a trial court to "assure itself that a defendant's constitutional right to a trial before an impartial jury has been fully protected." *State* v. *Brown*, supra, 528. I disagree, however, with the majority's conclusion that such an inquiry was all that was required in the present case. In *Brown*, this court stated that, "[t]he more obviously serious and credible the allegations [of jury misconduct], the more extensive an inquiry is required . . . ." Id., 531.

There is no question that, in the present case, the allegation of juror misconduct was credible, as it came from the judge himself, and was apparently confirmed to him by several other court personnel and even the prosecutorial team. As to the seriousness of the allegation, there can be no real doubt that a juror who has potentially missed one hour of testimony, by the judge's own observation, creates a serious threat to the defendant's constitutionally guaranteed right to a fair trial.[2] Common sense dictates the conclusion that a juror who is asleep during the presentation of testimony could

[2] In his brief, the defendant points out that the testimony of the police officers heard on the day the juror was sleeping included information on where shell casings, a Taco Bell food wrapper, and a beer can were found, which the state used to place the defendant and the car at the exact location where the shooting occurred.

not possibly be said to have fairly and impartially considered all of the evidence.[3] Indeed, the trial judge in this case agreed, stating that "a sleeping juror obviously has not heard all the evidence and that inattentiveness could compromise the defendant's guaranteed right to a jury trial." Given the gravity of the potential constitutional violation at play, I would conclude that, under *Brown*, a more serious inquiry was required.

It is highly unlikely that the limited course of action taken by the judge in this case, i.e., inquiring with counsel, could have possibly assured him that the defendant's right to an impartial jury was fully protected, as neither counsel could say whether the juror was, in fact, sleeping. The only person with the information necessary to make a determination as to whether, and for how long, the juror was sleeping, was the juror himself. Because the trial court neglected to question the juror on this issue, it could not possibly have been assured that the defendant had the benefit of an impartial jury or received a fair trial. Therefore, I conclude that the trial court abused its discretion by failing to conduct a more robust inquiry into the misconduct. See, e.g., *State* v. *Brown*, supra, 235 Conn. 524 ("[w]e have limited our role, on appeal, to a consideration of whether the trial court's review of alleged jury misconduct can fairly be characterized as an abuse of its discretion").

Due to the unpreserved nature of this claim, however, the question becomes whether the trial court's abuse of discretion in this case constituted a constitutional violation that "deprived the defendant of a fair trial . . . ." *State* v. *Golding*, supra, 213 Conn. 240; see *In*

---

[3] Taken a step further, would a juror who was physically absent from the courtroom for one hour during the presentation of evidence be considered capable of fairly carrying out his or her duty? Of course not. The only meaningful difference in this case is in the fact that the juror remained, in a physical sense, in the courtroom.

*re Yasiel R.*, supra, 317 Conn. 781. I conclude that it did. "[T]he right to a trial by jury guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . . A necessary component of the right to an impartial jury is the right to have the jury decide the case solely on the basis of the evidence and arguments given [it] in the adversary arena after proper instructions on the law by the court." (Citations omitted; internal quotation marks omitted.) *State* v. *Hughes*, supra, 341 Conn. 415–16. A juror cannot possibly consider all of the evidence presented if he or she is not *awake* for the presentation of all of that evidence, as the trial judge in this case recognized.[4] As discussed, it was the trial court's responsibility to conduct the appropriate inquiry into the juror misconduct at issue to ascertain whether the defendant's right to a fair trial had been violated.

The majority nevertheless concludes that the trial court's failure to make a specific finding on the record that the juror was, in fact, sleeping requires this court to conclude that the defendant's constitutional rights were not violated. I disagree. The record before us reveals that numerous individuals, including the prosecutors, court clerk, court monitor, two marshals, and the judge himself, observed the juror exhibiting behavior that indicated he was asleep for *at least* one hour of testimony. To conclude that no constitutional violation occurred simply because the trial court failed to properly inquire and make the requisite finding as to the

---

[4] I also note that the jury has an importance and constitutional status beyond the interests of the defendant alone. See, e.g., *Maldonado* v. *Flannery*, 343 Conn. 150, 161, 272 A.3d 1089 (2022) ("the right to a jury trial is enshrined in our constitution and counts among the most vital checks against governmental overreach"). In the present case, although the question rightly centers on the defendant's constitutional rights, it is also the case that the sleeping juror could not have fulfilled his role in service to the overall criminal justice system and the vindication of the community's interests in a fair trial.

juror misconduct would unfairly punish the defendant for the trial court's own lack of action. This lack of action on the trial court's part deprived the defendant of a fair trial because the court, by its own inaction, failed to ensure that all jurors were awake and capable of hearing all of the evidence presented against the defendant.

As to whether this constitutional violation is subject to a harmless error analysis, I find the Massachusetts Supreme Judicial Court's decision in *Commonwealth* v. *McGhee*, supra, 470 Mass. 645–46, to be particularly persuasive. In that case, the trial judge was notified by a reliable juror that another juror had "slept through important portions of the trial." Id., 645. As in the present case, the trial judge in *McGhee* "conducted no further inquiry to determine whether and, if so, when the identified juror was sleeping," and, as a result, the Supreme Judicial Court concluded that "there [was] serious doubt that the defendant received the fair trial to which he is constitutionally entitled." (Internal quotation marks omitted.) Id. The court then went on to conclude that "[t]he serious possibility that a juror was asleep for a significant portion of the trial is [a] structural error . . . that so infringes on a defendant's right to the basic components of a fair trial that it can never be considered harmless . . . ." (Internal quotation marks omitted.) Id., 645–46. I would similarly conclude that the serious possibility that the juror was asleep during important testimony in this case is a structural error that raises distinct concerns regarding whether the defendant received a fair trial. See, e.g., *State* v. *Lopez*, 271 Conn. 724, 733–34, 859 A.2d 898 (2004) ("Structural [error] cases defy analysis by harmless error standards because the entire conduct of the trial, from beginning to end, is obviously affected . . . . Put another way, these errors deprive defendants of basic protections without which a criminal trial cannot reliably serve

its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair." (Internal quotation marks omitted.)). In this case, the trial court's error in failing to inquire as to whether the juror was sleeping, what testimony the juror had missed, and whether the juror was ultimately fit to deliberate deprived the defendant of basic protections and undermined the reliability of the jury's determination. As such, I would conclude that the trial court's error was structural and not subject to harmless error review.

Ideally, I would remand the case to the trial court for an evidentiary hearing as to whether the juror in question was asleep during the presentation of evidence in this case. See, e.g., *State* v. *Castonguay*, 194 Conn. 416, 436, 481 A.2d 56 (1984) (remanding for evidentiary hearing on whether jurors discussed evidence prior to deliberating). At this point in the litigation, however, I agree with the defendant that "[i]t would be nearly impossible to accurately assess how much of the testimony the juror missed if there were to be an evidentiary hearing years after the trial." I therefore conclude that the defendant's right to a fair trial has been violated, and I would remand the case for a new trial on the murder and carrying a pistol without a permit charges. See, e.g., *State* v. *Hughes*, supra, 341 Conn. 417–18 (juror misconduct requires reversal and new trial when it has denied criminal defendant fair trial); *Commonwealth* v. *McGhee*, supra, 470 Mass. 645–46 (defendant was entitled to new trial when he was denied fair trial due to "[t]he serious possibility that a juror was asleep for a significant portion of the trial").

Accordingly, I respectfully dissent as to this first issue and concur with the majority with respect to the other three issues.